R. H. NYE v. THE PURE OIL COMPANY, A CORPORATION, AND HARRY HALSTEAD, INDIVIDUAL.

(Filed 15 June 1962.)

**1. Pleadings § 2—**

The complaint should contain a plain and concise statement of the facts constituting the cause of action. G.S. 1-122.

**2. Pleadings § 12—**

Upon demurrer, the complaint will be construed liberally in favor of the pleador with a view to substantial justice between the parties. G.S. 1-151.

**3. Torts § 2—**

If each defendant is liable to plaintiff only for the wrong separately done by such defendant, each defendant must be sued separately, but if there is a joint invasion of plaintiff's rights by separate parties, warrant-

ing a judgment against them jointly, plaintiff may join all such defendants in one action.

**4. Same; Conspiracy § 1—  Complaint held to state one cause of action for conspiracy to destroy plaintiff's business.**

The complaint alleged that plaintiff, an oil distributor, owned a number of filling stations, leased others and had others as regular customers, that plaintiff leased his business properties for a term of five years to corporate defendant with option to the corporate defendant to purchase during the term of the lease, with provision that if it did not exercise the option it would reassign to plaintiff all the service lease agreements and would not conduct any transactions inimical to the best interests of the business, that defendant corporation fraudulently misrepresented to plaintiff that it would exercise the option, thereby inducing plaintiff to make changes in certain of the filling stations which destroyed their usefulness as outlets for petroleum products, that the individual defendant, for his own benefit and for the benefit of the corporate defendant, made contracts with various service station operators in order to defraud plaintiff of his rightful business and good will, and that after defendants had made it impossible for plaintiff to re-engage in the petroleum business, the corporate defendant refused to exercise the option to purchase. *Held:* The complaint alleged a single cause of action to recover for a completed conspiracy to destroy plaintiff's business, and demurrer for misjoinder of parties and causes of action was properly overruled and motion of the corporate defendant to strike all allegations with respect to the fraudulent conspiracy was properly denied.

APPEALS by defendants from *Williams, J.,* January 1962 Civil Term of ROBESON.

This action was begun in October 1960. Plaintiff, on a date not disclosed, filed an amended complaint verified 18 April 1961. On 15 July 1961 defendant Halstead demurred to the amended complaint for that it (a) failed to state a cause of action, and (b) if a cause of action was stated, several were stated, resulting in a misjoinder of parties and causes. Defendant Oil Co. demurred for similar reasons. It also moved to strike numerous parts of the complaint and for an order requiring plaintiff to make the complaint definite and certain. The demurrers and motions were overruled. Defendants appealed as permitted by Rule 4(a), 254 N.C. 785.

*Charles B. Nye for plaintiff appellee.*

*R. A. McIntyre, Ingram P. Hedgpeth, Everett L. Henry, and Ozmer L. Henry by Ozmer L. Henry for defendant appellants.*

RODMAN, J. This question is determinative of the appeal: What cause or causes of action, if any, has plaintiff stated?

Our statute, G.S. 1-122, says the complaint must contain "a plain and concise statement of the facts constituting a cause of action,

without unnecessary repetition." Strict adherence to this statutory requirement would perhaps have made this appeal unnecessary.

G.S. 1-151 says: "In the construction of a pleading for the purpose of determining its effect its allegations shall be liberally construed with a view to substantial justice between the parties." With this command in mind, we have examined the complaint to ascertain the facts alleged warranting a recovery against defendants jointly. If the facts alleged are sufficient to warrant recoveries against each defendant for wrongs done only by that defendant, there is a misjoinder of parties and causes. *Williams v. Gooch,* 206 N.C. 330, 173 S.E. 342; *Lucas v. Bank,* 206 N.C. 909, 174 S.E. 301. In that event the demurrer should be sustained. If, however, the facts alleged show a joint invasion of plaintiff's rights warranting a judgment against defendants jointly, there has been no misjoinder.

Summarized, the complaint is, we think, sufficient to allege, but not in the order here stated, these facts: 1. The residence of the parties. 2. Plaintiff was a distributor of petroleum products in Robeson County. The physical assets used in the operation of his business consisted of (a) a bulk storage plant, (b) 15 retail outlets or service stations owned in fee, and (c) "40 service stations or outlets which were either leased to plaintiff or else were regular customers of plaintiff." 3. Oil Co. is a producer of petroleum products which it distributes to retail outlets, either directly or through independent bulk storage plants operated by wholesale distributors. 4. Prior to November 1954 defendant Oil Co. had no facilities "for servicing service stations located in Robeson County and was only operating one or two service stations in said County." 5. Oil Co. wished to increase the sale and consumption of its products in Robeson County. Halstead was desirous of handling the products of Oil Co. as an independent jobber. These desires of defendants could be obtained by the acquisition of plaintiff's valuable business and good will, built by forty years of operation. 6. The aspirations of defendants could be accomplished by a contractual arrangement seemingly fair on its face but made without any intent on the part of defendants to comply with its provisions. Pursuant to this plan, plaintiff and Oil Co., in November 1954, entered into a written contract by which plaintiff leased to Oil Co. his business and properties for a term of five years. This contract gave defendant Oil Co. an option to purchase the business at any time during the period of the lease. The contract further provided: "In the event the option was not exercised and/or the term of the lease was not extended, there was a specific understanding and agreement that defendant Pure would return the petroleum business to plaintiff by reassigning to plaintiff all service lease agreements along with any

extensions of said service leases obtained by defendant Pure during the period it was operating plaintiff's petroleum business pursuant to the November 4, 1954, lease. It being clearly understood, covenanted, and agreed that the plaintiff was to resume operation of his petroleum business at the termination of the original agreement of November 4, 1954, if the corporate defendant did not exercise the option set forth therein, so that the plaintiff could have a going, complete and substantially the same petroleum business as he had theretofore leased and sublet unto the corporate defendant. And it was specifically understood, covenanted and agreed that if any of the subleases between the plaintiff and the corporate defendant expired during the term of said agreement of November 4, 1954, the same would be extended and be reassigned to the plaintiff by the corporate defendant on or about December 1, 1959, if the corporate defendant did not exercise the said option. It being further understood from the terms of the agreement that the corporate defendant, because of its position of dominion and control over plaintiff's petroleum business, was not to conduct any transactions related to the retail petroleum business in or around Robeson County in any manner that would in any way be inimical to the best interests of plaintiff's pertoleum business." 7. Notwithstanding the covenants contained in the lease, Halstead "did actively, for his own benefit and for the benefit of the Pure Oil Company, contact and contract with various service station operators in order to defraud the plaintiff of his rightful business and of his good will with the public, all for the benefit of both defendants." 8. Defendants assured plaintiff that Oil Co. would exercise its option and purchase plaintiff's business. Defendants knew these assurances were false and Oil Co. would not purchase. The assurances so given led plaintiff, as defendants had planned, to consent to changes in certain of the service stations owned by plaintiff in fee, thereby destroying their usefulness as outlets for petroleum products, and led plaintiff to assent to the taking and renewal of leases on other service stations in the name of Oil Co. These things were done to prevent plaintiff from re-entering the business of selling petroleum products. 9. Defendants, having made it impossible for plaintiff to re-engage in the petroleum business as they had conspired to do, then refused to exercise the option to purchase.

In short, plaintiff alleges a completed conspiracy to destroy his business by means of a contract which he made in good faith, but which defendants knew would never be complied with. Plaintiff does not seek damages for breach of the contract. He seeks damages for the tortious act of destroying his business accomplished by a perversion of the contractual relationship existing between plaintiff and Oil Co.

The complaint does not allege several causes of action based on breach of contract by Oil Co. at the suggestion of Halstead. It alleges a single cause of action based on fraud to which each defendant was a party. The cause of action alleged is a tort. *Griggs v. Griggs,* 218 N.C. 574, 11 S.E. 2d 878; *Trice v. Comstock,* 121 F. 620; *Peitzman v. City of Illmo,* 141 F. 2d 956; *Sanderson v. Crowley,* 180 F. 2d 124; McIntosh, N. C. P. & P., vol. 1, p. 344-5; 36 C.J.S., Torts, sec. 3; 52 Am. Jur. 380. The court properly overruled the demurrers.

The motion of Oil Co. to strike the allegations would, if allowed, have defeated plaintiff's right of action by deleting all allegations with respect to the fraudulent conspiracy. That motion was properly denied.

Affirmed.